## CONTROL OF CHURCH PROPERTY.

Circuit Court of Fulton County.

SILAS MUNSEL ET AL v. D. S. BOYD ET AL.

Decided, May 11, 1907.

*Injunction—Upon Petition of Church Trustees—Complaining of Interference with Control of Church Property by Others Claiming to Act as Trustees—Jurisdiction in Equity—Parties—Misjoinder—Quo Warranto—Exclusion of Church Members without Notice—Office of Trustee of a Church not Coupled with an Interest—Tenure of—Dismissal of a Pastor.*

1. There is jurisdiction in a court of equity to determine the rights of the parties to an action for injunction, where the plaintiffs claim to be legally elected trustees of an incorporated church, and ask that the defendants, who also claim to be trustees and one of them to be the pastor of the church, be restrained from interfering with their control of the church property or their use of it for purposes of worship.

2. The fact that the plaintiffs sue as trustees and also as members of said church and in behalf of other members thereof, does not present a case of misjoinder, notwithstanding they are perhaps asserting rights in two capacities.

3. The office of trustee of a church is not one coupled with such an interest that the church body in its corporate capacity may not, at a meeting of its members duly called and held, terminate the tenure of such office.

4. The fact that members of a church have become dissatisfied with the pastor, and disapprove of the control into which the church has fallen and cease to attend its services, does not afford ground, without some rule or law of the church therefor, for their dismissal or expulsion without notice or an opportunity to appear and defend; and a vote of expulsion under such circumstances does not terminate membership.

WILDMAN, J.; HAYNES, J., and PARKER, J., concur.

The case of Silas Munsel and others, claiming to be trustees of the First Baptist Church of Swanton, Ohio, against D. S. Boyd and others, is an unfortunate controversy which has grown up among persons claiming certain rights and interests in the as-

sociation mentioned in the caption of the petition, the First Baptist Church of Swanton, Ohio.

The case of the plaintiffs is presented by a petition addressed to the equitable jurisdiction of the court and asking for an injunction to restrain the defendants from doing certain acts and interfering with the plaintiffs in the exercise of claimed rights and duties and the control of the church property belonging to said association.

The case was heard in the court below and appealed to this court. It was first submitted to us upon demurrer to the petition, setting out several grounds under the statute, indeed nearly all the grounds specified in the section for demurrer: a lack of jurisdiction; incapacity in the plaintiffs to sue; defect of parties plaintiff; defect of parties defendant; that the petition does not state facts sufficient to constitute a cause of action; that there is a misjoinder of parties plaintiff and a misjoinder of parties defendant. The plaintiffs allege that they sue as trustees and also as members of the church society named and in behalf of a large number, to-wit, twenty other members of said church.

We have had some trouble over the question of misjoinder, but have concluded that there is no misjoinder of either parties plaintiff or parties defendant. It is true that the plaintiffs are asserting rights in perhaps two capacities. They allege that they are both trustees and members, and that they are asking relief in behalf of other members, but after all the result sought is one, and it is a result which might with propriety be sought by the plaintiffs acting in either capacity, as trustees of the corporation or as members thereof, provided that they have the right to sue at all in a court of chancery.

The case of *Bartholomew* v. *Lutheran Congregation*, 35 Ohio St., 567, is one in which the trustees, or alleged trustees of a church, sued as such and the defendants were sued as persons claiming to be trustees and alleged to be usurping the powers and duties of such. No especial question seems to have arisen in that case as to whether suit was brought in the proper right or not, that is, as to whether they should have sued in their representative capacity or whether in their capacity as members of an association, but the relief sought and granted was such as

might perhaps have been, at least in part, granted them as members of the association, if they had sued as such.

The suit here seeks not only to enjoin the defendants from exercising control as claimed trustees over the property of the church, but also from interfering with the plaintiffs in the exercise of such control. To that extent it is, perhaps, a controversy as to a right of trustees to control property entrusted to the trustees as such. But the petition further asks for an injunction to restrain the defendants from interfering with the plaintiffs in worshiping in said church or otherwise entering into it as members. I am not attempting to recite the precise phraseology of the petition or its prayor, but am giving merely the substance.

Without tarrying long upon the matters presented by the demurrer it suffices to say that it is our conclusion that the demurrer should not be sustained.

I should, before leaving the subject however, pay brief attention to the claim made by counsel for defendants that the court has no jurisdiction in equity to determine the rights of these parties at all. The contention is that the allegations of the petition, if conceded to be true, make a case for quo warranto rather than for equitable relief by injunction, and that so far as possession of the property is concerned, the plaintiffs might have an adequate remedy at law by ejectment or something of that kind. Our judgment, however, is that a court of equity has jurisdiction, although the validity of the election of persons as trustees or the question of authority of one of the defendants to act as pastor may be incidentally considered to some extent in the consideration of the case.

The object of the suit, at least the proper object of the suit, is not exactly to determine the rights of claimants to office, but rather to restrain persons from interference with the control and possession of property; or with the use of the property to the extent to which trustees or members of a religious association may use the property of such association. The defendants, as the petition declares, claimed to be trustees and are in possession and control of the property and keep the plaintiffs out. The plaintiffs claim that they are the legal trustees. They

assert that one D. S. Boyd claims to be pastor of the church, and in substance that he is not; that although formerly pastor of the church he was deposed by the plaintiffs and that he is no longer entitled to exercise the duties or powers or functions of that office.

There are cases, of course, in which the rights of claimants to act as officials of one kind or another are to be determined only by proceedings in the nature of quo warranto, but the 35th Ohio St. case, already cited, *Bartholomew* v. *Lutheran Congregation,* is sufficient authority, we think, for entertaining jurisdiction upon the averments of this petition, and as a court of equity.

The answer admits an averment found in the petition that this church is an independent organization subject to no control from the outside by any other church or organization. It seems to have been, although an incorporated body, a sort of law unto itself, excepting so far as it is governed by the teachings of the Scriptures and general customs, perhaps, of the Baptist church or Baptist churches and customs which may have grown up in its own body.

The evidence which has been introduced upon the hearing, for the case has been heard by us upon evidence, pending our examination of the questions and conclusions thereon arising on the demurrer, discloses that said D. S. Boyd became the pastor of this church society some time in the year 1891 and that he has continued to act as such, claiming to be still pastor up to the rendition of the decree by the court of common pleas in the present suit.

On the 18th day of May, 1905, the plaintiffs and others, claiming to be members of the association, held a meeting at which they elected a new board of trustees consisting of five members. It may be said in passing that while no regulations appear to have been drafted or adopted by this society, the number of trustees has been usually, if not always during its history, five. There may have been vacancies at one time or another, but we are satisfied from the evidence that by common consent or otherwise the number of five has been adopted as a proper number for the board of trustees. At this meeting of the 18th of May,

1905, the persons acting and electing that board of trustees had no power so to act, unless they were in fact members of this corporate body, and upon the question as to whether they were or were not members on that day centers a large part of the present controversy.  We will not attempt to review the evidence in detail.  It is manifest that not many years after the induction of Mr. Boyd into the pastorate dissatisfaction arose among members of the organization, and that suggestions were made that he be retired or that he be asked to resign from the pastorate.  At one time, as is claimed, he tendered a resignation which was not accepted.  He does not seem to have tendered a resignation at any time which was accepted, and he was never formally deposed, unless by the action of the meeting of the members held but a short time before the beginning of the suit in the court of common pleas; and the deposition at that time was by the plaintiffs and those associated with them claiming to be members of the corporate body.  This claim was disputed by Mr. Boyd and his friends and associates in the church, upon the ground that, although many of these claimed members had been such at one time, they had been dropped from the roll of the church, and by reason of one cause and another had been expelled or dismissed from the church, so that they had no longer any power to act as members.  It appears, according to this claim, that although at the coming of Mr. Boyd to the church in 1891 the church had something more than one hundred members this number had been reduced year by year until at about the beginning of 1896 there remained but a corporal's guard, consisting for the most part of Mr. Boyd, his sons and those who were either akin to him or related by marriage.  It appears also that the persons claiming to act as trustees of the church at that time, and who have been brought into court as defendants, and who concede that they are acting and claiming as such trustees, are either of his own kin—his own sons or immediate relatives by blood—or that they are related to him by marriage.

Many of the expulsions to which I have referred, or attempted expulsions of members of the church, were had without any previous notice to the persons so sought to be expelled, so as to enable them to resist or defend against the attempted expulsion

if they saw fit.   At one time nineteen members were so dismissed from the church or dropped from the rolls and at another twenty, without any apparent notice to them of the intention of the corporate body to dismiss them from membership.   We think this could not be done, and we find no authority either in the book called the "star book" which has been offered in evidence or in the New Testament passages quoted and cited by Mr. Boyd in his testimony, or by any customs of the church which will justify the severing of the relations of the members in this way.   It is true that most of them had ceased to attend upon his ministrations; they were dissatisfied with him; they did not approve of the management and control into which the church had fallen, and so remained away.   We do not, however, deem that this was a relinquishment of their rights as members, and our judgment is that except as to such members as had previous notice of an intention to pass upon their membership by investigation and dismissal if necessary, or as to such as were present when their cases were investigated, and had knowledge at the time of such expulsion, the membership was not terminated, and that the persons so attempted to be expelled remained members of the association up to the present time.

We think also that more than a quorum of legal members gathered at the meeting of May 18, 1905, and that proper notice of that meeting had been given to all persons concerned.   It appears to us that Mr. Boyd and the faction supporting him knew of this contemplated meeting; that they might have attended it if they had seen fit.   There is no claim in this petition that Mr. Boyd and his sons and others associated with him are not members of the association; and it is not claimed on the other hand that there was any interference with their being present at the meeting referred to.   It is agreed that five members of the church constitute a quorum to transact business at any meeting properly called.   We think then that this meeting of May 18th was a legal meeting, and that it had authority to do any proper acts or transact any proper business which might come before it connected with the affairs of the church organization.

Now, it is insisted that although the board attempted to elect five trustees at this meeting of May 18, 1905, that there were

still three trustees who had been elected for three year terms and that those terms would not expire until a date subsequent to May 18, 1905. This seems to be true. And it is insisted that because of this fact the members at the meeting of May 18, 1905, had no power to elect a board of five members. It has occurred to us that this question might be disposed of upon either of two grounds. While by custom the board of trustees of this church consisted of five members there is no regulation and no statute that prevented them from at any time increasing that number, so that it would not necessarily follow that even if there were three legal trustees already holding office on May 18, 1905, the members of the church at a valid meeting could not add to that number five more so as to make eight trustees instead of five. We are inclined, however, to place our decision upon another ground, and that is that the trusteeship is not an office coupled with such an interest that the church as a whole, the church as a body in its corporate capacity and power, at a meeting of its members duly called and held, may not terminate the tenure of any trustee. We think that they had such power under all the circumstances of this case, considering the situation that had arisen, the attempts made by Mr. Boyd and those associated with him to control all the affairs of the church, to keep its functions, its powers, its property in their own hands and to expel from membership and exclude from power the plaintiffs and all others associated with them, who had theretofore been members of the association and as we think were so still. We believe these facts justified the election of a full board, and we are satisfied that it was the intention, although not expressed upon the record of these proceedings, to elect a board of five which should constitute the whole board of the church, and that so many as were necessary should take the places of the three members who had been previously elected and were still in office.

Our judgment then is that, not only are the persons claiming here as plaintiffs, members of the association, and that a large number of others who have been treated as expelled members still retain their membership in the association, but also that the plaintiffs constitute the board of trustees of the association, and that they are entitled to such control and management and direc-

tion of the affairs of the chuch as legitimately belong to any legal board of such body.

If this is true, they are clearly entitled to at least a part of the relief which is sought here. We are not inclined to believe from the facts disclosed to us that there is any present intention on the part of the defendants to incumber or dispose of the church property, and we doubt very much their ability to place any troublesome cloud upon its title under the present circumstances. The property is already mortgaged, as appears, to the extent of $500, which might stand somewhat in the way of their disposition of it; but in addition to that, with this decree of the court at which we are arriving, and under the manifest conditions which have been disclosed, it is hardly likely that any persons would be induced to attempt to make an investment in this church property, receiving title from Mr. Boyd and his adherents.

Nor are we inclined to think that there is any disposition on the part of the defendants to prevent the plaintiffs from entering the church during the hours of open session for religious worship, or otherwise to take part in the public meetings to the extent that members of a congregation not members of a church would be permitted to take part.

We do not think then that the plaintiffs need all the relief for which they ask. We do think, however, that they are entitled to an injunction restraining the defendants from interfering with them, the plaintiffs, in the control of the church property. We think that they are entitled to an injunction restraining the defendants from attempting to exercise control over it, except in so far as the defendants as individual members may take part in the meetings or other affairs of the association.

There is another matter to which the petition invites the attention of the court, and that is the status of Mr. D. S. Boyd in the church. The petition alleges and the answer admits that he is one of the trustees. The answer is verified by Mr. D. S. Boyd with others, but it appears upon the trial that he ceased to be a trustee at some time—whether before or after the beginning of the suit I do not know. He insists however that he is still pastor of the church. It becomes essential to inquire as to whether he is justified in this claim.

After the meeting of May 18, 1905, to which I have referred, to-wit, on January 24, 1906, the recommendation was made by the board of trustees, as appears by the record of the society, that the pastorate be declared vacant and that the Rev. D. S. Boyd, the so-called pastor, be informed that his relationship as such cease with the date last mentioned.

On the same day the society met in the evening at 7:30 o'clock and we find this record of the proceedings, so far as relate to the question which we are now considering:

"Brother Vaughan then attempted to read a recommendation of the trustees of the church, but Mr. Boyd and a few others made such disturbance that he waited for silence. On motion of Brother M. G. Will, seconded by Sister E. J. Crissey, it was voted to adjourn to Sister E. J. Crissey's home. A few minutes later the First Regular Baptist Church of Swanton, Ohio, met pursuant to its adjournment as above stated in the home of Sister E. J. Crissey. Brother J. C. Vaughan was appointed chairman. As the clerk had left, the minutes of the last business meeting was waived. The board of trustees submitted the following report and on motion of Brother David Kelsey and seconded by Brother M. G. Will, the church unanimously voted to adopt the report and instructed the clerk to send a copy of the recommendation to Mr. D. S. Boyd. On motion it was voted that Brother J. C. Vaughan, David Kelsey, Silas Munsel, Sister C. A. Fairchild and Charlotte Munsel be the pulpit committee to look after the matter of pulpit supplies and a pastor."

It was then voted that the church hold a business meeting in three weeks, etc. The reference to the report or recommendation which it is stated followed has evident reference, we think, to a copy of the recommendation found on the page immediately preceding instead of following the minutes of this meeting. There is no other record and the witnesses so inform us.

Our conclusion on this branch of our inquiry is that the relation of Mr. Boyd to the church as its pastor terminated on January 24, 1906; that the will of the members unanimously expressed at this meeting was one which they were authorized to make, and that the meeting was regularly called.

There are many facts connected with the entire history of this association that show an inexperience in the matter of rules and

records and proceedings generally; but we should look to the substance of things and endeavor to ascertain just what parties are entitled to ask and just what they have at times sought to accomplish and what their relations are to one another, as shown by the transactions when analyzed and thoroughly examined.

This case has been a most unfortunate controversy and it has developed into one of those bitter feuds that we sometimes discover in bodies which should especially exemplify to the world that living Christian spirit which was inculcated by the Master. It is a kind of case which the courts dislike to approach. We have no disposition or wish to interfere in the affairs of religious organizations, and we have commented upon the transactions only in so far as a full consideration of the questions arising in law and submitted to us require.

I have sufficiently indicated how far the decree of the court should go and the journal entry will be drawn accordingly.

JUDGE PARKER:    I think, in looking through the "star book" that the pastor's relation could not be terminated short of three months; the pastor is entitled to three months notice.

JUDGE WILDMAN:    Then instead of it's being January 24th, it should be April 24th.   What I said in relation to his pastorate terminating should be changed so that the date instead of being January 24th will be April 24th—three months from the time of the action of the church body as required by the custom or rule disclosed to us.

*Ray & Cordill, J. C. Cloon* and *J. C. Paxson*, for plaintiffs.
*John Schlatter*, for defendants.